Good morning, your honor. Yes. All right. And Mr Cavanaugh. Yes, your honor. All right. So, Mr. Sharon, you have reserved two minutes for rebuttal so that gives you eight minutes out of the gate, you may proceed. Thank you your honors and may it please the court, William Sharon for the Feinberg family. If it's okay I'm going to jump right to the choice of law issue presented in this appeal because I think it's the most complicated issue. Section 1404 a is not supposed to result in a change of law, a transfer of a case within the same federal judicial system does not result in what the Supreme Court says is a bonus of a change of law. So if the Feinberg's case had been transferred under 1404 a from Illinois to New York and that was the only case there was we wouldn't have this problem, because the district court would have had to apply Illinois law, and that's under Ferens, but because Abbott had started a second filed case that created a conflict of law, and that was Abbott trying to get the prescribed bonus of a change of law anyway. We're seeking vacature and reversal, because the district court didn't apply this circuits first filed rule to this conflict and opted instead for a new balance of interest tests. And in so doing, the district court created a split with Judge McMahon in the shot decision in the transfer and consolidation setting. That's the matter of first impression for this court. Whether Shaw's first filed rule analysis should control the choice of law analysis, or whether the district court's balance of interest test should control. It looks to me, I mean, both cases were started within a short time of each other. Correct. Correct. What was that like a week or two weeks or something of that sort. I think it was about 10 days. 10 days. Right. It seems to me that what happened here was that the, the idea here was to get that the Feinberg's wanted to get Illinois, Illinois law, if possible, and that's why the filing occurred in Illinois. Because all of the contacts and all of the interests were in New York. Right. Well, Judge Walker, the contacts are really overwhelmingly in Illinois. Abbott is in Illinois. Abbott's executives who were the ones taking and copying this art in concert with Bruce Duncan, all in Illinois. Bruce Duncan was in Illinois. After that, ultimately, I think the New York wasn't determined that the balance of interests were ultimately in New York. The balance of conveniences, Your Honor, a different test, but Judge Nagel in Illinois applying a balance of conveniences test for 1404A did transfer it. He did so under some misconceptions. Okay, but, but, but my, my point here primarily is, look, this was a, a move on the part of the Feinberg's to get to get to Illinois first to be able to take advantage and make the argument that you're making about the first file rule. I'm sorry. That was the situation, you had the painting Abbott wanted it back. There's no need for you to do this preemptive strike, it seems to me, except to go and get the first file rule. Well, I think what Your Honor is talking about is what's called the special circumstances test in this circuit, which is the insurance policy to make sure that a declaratory judgment action filed in another federal court is not improper. And here it's not. Employers is squarely on point and it talks about how a DJ action is improper. If it is filed in direct response to a direct threat of litigation elsewhere, which doesn't exist here, or if it is solely motivated by forum shopping, which means there's only a de minimis connection with the forum, which, because again, this is Abbott's home jurisdiction, and Duncan was in Illinois, it's way more than de minimis. But Your Honor has, and this circuit has, the goalie, if you will, of the special circumstances test to prevent that kind of outcome. The problem really is that because the first filed rule does provide that protection, if you pass the first filed rule, then that's the proper result. Doing a balance of interest test, as the district court did, actually encourages second filed litigation. What's going to happen is parties like Abbott are going to run and start second actions to try to change the law, and then throw it to already taxed courts to deal with balance of interest tests. And putting aside the problem of judicial administration, again, employers talks about the reason this circuit has a first filed rule, judicial administration, avoid duplicative litigation, and this is key, honoring the plaintiff's choice of forum. First filed rule is a fair and straightforward test, but more to the point in this context, the 1404A transfer context, it coincides with what the Supreme Court has repeatedly said, which is 1404A transfers should not produce conflicts of law. They shouldn't result in any change of law. The Supreme Court's well-known Piper Aircraft case from 1981 deals with this specifically. It reversed the Third Circuit, which had found that protecting another jurisdiction's law was relevant to the forum nonconvenience dismissal analysis. And the Supreme Court in Piper Aircraft said, no, that's forum nonconvenience dismissal is different from 1404A transfers. Protecting the original forum's law, protecting that law is what matters to transfers. And that's why the court explained that district courts have more discretion to transfer under 1404A, precisely because you're not going to get these conflict of law situations. The law is simply that. Mr. Chan, can I interrupt you? Sorry. Of course. Other than the statute of limitations, are you suggesting there's any difference between Illinois and New York on Riplevin as a cause of action? Not on Riplevin, Your Honor. It is the statute of limitations. And the inquiry notice standard. So, again, we submit that Feinberg's right to have Illinois' choice of law rules shouldn't have changed with the transfer. The balance of interest test that the district court applied, which looks to state and market interests, was the inapt rule because it doesn't consider what the Supreme Court says in cases like Van Dusen and Piper Aircraft at all. And it's not the right way to look at this kind of procedural dilemma because the law shouldn't change. And Abbott did not run to New York to vindicate New York's interest as a marketplace. It ran to get away from its home jurisdiction of Illinois. And so our proposal is that, and this was what Judge McMahon in Shaw ruled as well, and we submit correctly, when a defendant like Abbott could defend in the first suit in its own home, when that suit is proper, but it chooses to bring a second suit outside of its home, then the focus is rightly on honoring the first filed choice and deviating only for good cause. I've talked about special circumstances. It's good cause, which doesn't exist here. I wanted to briefly talk about the balance of conveniences, which is also discussed in employers. The balance of conveniences was not applied by Judge McMahon in Shaw for good reason, and it goes right back to the same point. 1404A should not dictate a change in law, regardless of conveniences that might have supported a transfer in the first place. And so that shouldn't happen here. We would say that even if you were to do some sort of a conveniences or interest analysis, as I said, the locus here was Illinois. This was about Abbott's own executive's conduct, which the district court showed some disinterest in, but it was fundamentally at the core of this case. They were the ones dealing with their art collection in these strange ways. Briefly about inquiry notice, had the court done the first filed rule in applied Illinois law and five-year limitations, this would have been an inquiry notice case. Inquiry notice, as this court has said, is a de novo review. It's an objective standard. It can be decided as a matter of law. This court does decide it as a matter of law. That's the Koch case. That's the Zuckerman case. And it's about whether there were facts that objectively Abbott could have discovered. Illinois defines inquiry notice as whatever is noticed enough to excite attention and put the party on guard and call for inquiry is notice of everything to which the inquiry might have led. It's about what red flags were open and notorious for Abbott to have noticed, and you don't get to absolve yourself and toll limitations by ignoring non-concealed facts. And I just want to point out, 17 days after briefing on this appeal was completed at the end of July, in August of 2021, a case was decided by Judge Broderick in the Southern District called Meyer v. Seidel, 2021 Westlaw 3621695. It's another art fraud case. Purchaser bought a fake work of art and sued the dealer well after the fact. The dealer, represented by the same counsel representing Abbott herein, successfully argued that inquiry notice applied in time barred on a very similar set of facts. The buyer had received a call saying, hey, you might be getting a call from the FBI that there might be a problem with, in that case, a Mark Rothko painting. When the FBI didn't call, the buyer sort of convinced himself that he had no problem and didn't do anything. And Judge Broderick said that in and of itself objectively was inquiry notice. You don't get out of it by waiting for something not to happen or not doing something. And so Abbott deciding not to do a side-by-side comparison of the works in this case, when it was doing that very comparison for other works, deciding not to give, I see Judge Sullivan. I mean, so you're suggesting that because Abbott has done this for other works, they're on inquiry notice that they need to do this for all works in their possession? Well, actually, I don't have to say it. Abbott said it. Abbott has admitted it was on inquiry notice because it started inquiring of the other works. But what it did was really bizarre because it had these archived images. And if you do a side-by-side comparison, I mean, the district court agreed this was plain as day and said, with the benefit of hindsight, it's easy to fall down. That's the quote. But for whatever reason, they did a side-by-side for a bunch of works. But in the case of Maine Flowers and Maine Flowers 2, which is at issue here, instead, they called Dr. Driscoll. But they didn't make him aware of the archived image. They didn't ask him to do the side-by-side. They actually misconditioned him and fed him false facts to make him think it was authentic and then just asked him in a vacuum, hey, does this photo of Maine Flowers, which is actually openly called Maine Flowers 2 on its reverse side, but they said it was called Maine Flowers, does this photo look consistent with works by Hartley? And Dr. Driscoll said it looks consistent, which he testified means he doesn't really know. And then he said, I need to see it to be sure. Abbott's own art consultant the very next day said he needs to see it to be sure. And Abbott, like what happened in Meyer v. Seidel, just sort of convinced itself that it didn't have to look, it didn't have to do anything responsible, but that's not enough to get rid of inquiry notice. I've exceeded my time. There's an entrustment issue, which I'll address on rebuttal with the court's permission. Thank you. Thank you very much, Mr. Cavanaugh. Please, the court, William Cavanaugh, on behalf of the Pele Abbott Laboratories, the district court appropriately used the balance of interest test, which, as it noted, was reasonable in a principled approach to the circumstances which were present here. Two mirror actions, neither of which had been enjoined or stayed. Now, two different district court judges found that New York had a superior interest appellant. Judge Sullivan, I can't hear you. Your sound. I muted myself because I thought maybe it was feedback, but your sound is not good. I mean, every time you speak, it sounds like you've kind of blown out a woofer. Do you have some extra device that's on? No. I just asked Judge Walker and Judge Kearse if they're having the same problem. I am having the same problem. It's not impossible, but it is distracting. It is distracting. It makes us harder to follow you. I apologize. I don't know. And my technical person just walked out of the room because he thought everything was fine. Is that any better? No. I'm wondering if you move the move the microphone around somehow might change it. I don't know. It seems to be some sort of confusion, electronic confusion going on in your system. Because it's it's it's unusual. Is that any better? Not really. Is your technical person nearby? Yes. He's nearby. I can get someone up here in a moment if we if you want to go on pause for a moment. I'll get someone up here. Let's do that. This is distracting. It's not. It's the last argument of the day. So we if we take a minute or two, that won't that won't kill anybody. I always worry that my sound is not working and people are too polite to tell me. So let me know. So far, so good. All right. All right. All right. All right. One, two. Let's open up again. That sounds much clearer. Let's practice a little bit. Am I clear? Yes. Yes. All right. Perfect. All right. So let's let me ask Miss Rodriguez, can we restart the clock at 10 minutes? Rick, why don't you stay just in case there's any problems? OK, seems like we're ready. Ready to go. You may have an open and apologies for the delay. The district court's balance of interest approach, as was, as it noted, reasonable and principled rather than the first to file approach, which encourages simply a race to the courthouse. The circumstances here are somewhat unique because plaintiffs Feinberg had asked the district judge in Illinois to enjoin the New York action, which the court declined to do. Feinberg never asked the district court in the southern district to stay the New York action. So you have two mirror actions, which both of which were proceeding as consolidated in the southern district of New York. Now, two different district court judges found that New York had a superior interest. Appellants tried to diminish the finding of Judge Norgal in the northern district of Illinois to say he was just dealing with convenience. Well, if you look at the third page of his decision, he goes into the public interest factors which favor New York. In addition, he holds that under 1404, the plaintiff's choice of forum isn't given the significance it used to be given in informed nonconvenience motions. Now. We've cited the fifth and 11th Circuit, which have adopted this balance of interest test. The first to file approach is it's a procedural mechanism, which, as the district court noted, can be used to try to determine which of two mirror actions should proceed. That didn't apply here because both actions were proceeding consolidated in New York. Feinberg didn't lose their ability to argue for the application of Illinois law. What they had was the ability to argue that Illinois had a superior interest to New York, and they lost that in front of Judge Schofield, who balanced the interest and determined that the fact that the painting had been in New York for decades, Duncan sold it in New York and that New York was a global art market, the same public interest factor that Judge Norgal in the Northern District invoked in favor of transferring the case. Now, the short decision, as the district court here noted, was distinguishable. There were different parties, different causes of action. And in addition, Judge McMahon in that case did stay the short case at one point and also held that she would have held the Southern District action in abeyance if the Indiana case had not been transferred and had gone forward. So applying a first to file case creates a race to the courthouse, which this court has noted is unseemly and potentially wasteful. And so when these unique circumstances present themselves and you have two mirror actions that are proceeding on a consolidated basis, it is appropriate to determine which state has the superior interest in resolving the statute of limitations issue here. The plaintiffs' reliance on cases like Claxton and Piper all involve single actions in which there has been a transfer to a different district. And yes, the transferor laws apply in that instance, but that's not the situation that we're dealing with here. Here we have two mirror image consolidated cases, neither of which were stayed, neither of which were enjoined, neither of which were dismissed, hence presenting the question of which law should apply. Now, as we point out in our brief, we submit no substantive differences between Illinois and New York as to when a replevant action accrues. There has to be a demand and a refusal, and hence the statute of limitations in the case of a bona fide purchaser, such as the Feinbergs contended here, it's appropriate that statute of limitations runs from that demand and refusal. But even if this court were to find that there is some difference and a discovery rule under Illinois law would apply here, the district court's findings in this case, the factual findings made clear that under a discovery rule, the action would have been timely. Now, in its latches ruling, in its fact findings on its latches ruling, the district court specifically, this is one of its heading, whether plaintiffs should have recognized theft prior to 2016. And the Illinois standard for under discovery rule is whether the injured party knows or reasonably should have known of injury and that it was wrongfully caused. The district court's latches decision precisely addresses that question. And the district court's decision walked through each argument that Feinbergs made that we should have discovered it in 1987, should have discovered it after the Driscoll letter, should have discovered it because it said Maine II on the back. And in each instance, reviewing the testimony, determining the credibility of the witnesses, the district court found that there were no there was no unreasonable delay here. It demonstrated diligence, took reasonable steps to investigate and acted promptly on discovering the fraud. Those are fact findings made by the district judge. As we know, in our brief. The appellant in this case did not appeal a single factual finding by the district court. Under this court's precedent, such as Lopresti, they need to specifically identify the findings that they're challenging and appeal those specific findings. They never did that. Their argument is, well, it's good enough for for us to just have appealed latches. That's not sufficient because this is a mixed question of law. In fact, those fact findings are subject to a clearly erroneous standard, which they have not appealed. Now, in their reply brief, they note that the standard is whether Abbott objectively should have known prior to 2016. Again, that is the precise question in the latches context in which the district court answered that that precise question, whether plaintiffs should have recognized that prior to 2016 and the district court in a careful analysis of the evidence, both the documentary evidence and the testimony of the witnesses concluded that there was no unreasonable delay, that Abbott was diligent. I understand Feinberg's disagree with that finding, but one, they didn't appeal it. And two, there is substantial in the record evidence to support it. For example, Feinberg's counsel made the point that, well, you could have done a side by side. Well, as our witnesses explained, there's a three step process that the experts told us to employ in trying to make these types of determinations. That side by side comparison was step three. First, you look at the provenance. Then you do a connoisseurship, which is why we brought in Driscoll. And it's all well and good for appellants to argue, well, in hindsight, you might have done a side by side. But instead, we followed a careful process laid out by our experts, including going to Driscoll and Driscoll providing us with his opinion that it was consistent with the original, that the photos he saw were consistent with the original. And in addition, there had been, if this was a forgery, the process would have been inconsistent with what had been found with others. Here, it was still the original frame. The verso on the back was the same. So the district court concluded that we employed appropriate diligence. We acted promptly upon discovering the fraud and hence found no latches. Now, appellants also challenge the the latches ruling as it relates to entrustment. But two very quick points. The first is that in order to get to the issue of prejudice, there first has to be a finding that that prejudice is tied to some unreasonable delay. As the district court noted, it wasn't even necessary for the court to go to the prejudice issue, they did address it, but because they found the district court found no unreasonable delay. The prejudice issue doesn't even come into play. That's consistent with this court's ruling in Zuckerman, that unfair prejudice has to be tied to unreasonable delay. Here, based on district court's findings, which are not challenged on appeal, there was no unreasonable delay. And as to their claim of prejudice, as to the entrustment issue, they didn't depose Duncan while he was still alive, which he was alive eight months after they filed the lawsuit. They could have investigated from Duncan's estate what the records were of his company, CAA. They could have explored other Chicago art galleries who might have dealt with CAA, but they did none of those things. They waited on Duncan because, frankly, they were aware that he was most likely, as the district court found, the thief. For all of these reasons, the district court's well-reasoned opinion should be affirmed. Did you say that the verso was the same on the copy as on the original? The labels were the same on the back, Your Honor. But the name of the painting was changed and the name of the artist was added. That is true. The reference to Maine Flowers II was behind a board and was not easily visible at the outset. Now, at one point, it was that that name was added to our records, that it was Maine II. But Dr. Driscoll also testified that Hartley did use Roman numerals at times. And again, the district court carefully evaluated all of the evidence as to what information was available to Abbott, what type of determinations it made, and found no unreasonable delay on Abbott's part. They did also have a picture, a photograph of the original from 1987, didn't they? I believe from 1961. Sorry, 1961. They had a picture and witnesses testified that trying to compare those two would be a difficult thing to do. In addition, as the district court found, it's a bit of hindsight that, well, maybe you could have noticed these differences from the two. Instead, after consulting with experts, Abbott was advised to go through a three part process of look at the provenance, look at the connoisseurship by talking to people like Driscoll. And then finally, the third step would be the science. Did they send the 1961 picture to Driscoll or only a picture of the copy? I believe it was a picture of the copy. All right. Thank you, Mr. Kavanaugh. We'll now hear from Mr. Charon for two minutes of rebuttal. Thank you, Your Honor. Judge Kearse, just to correct something that counsel said, Maine Flowers II was not only behind something on its verso. At record pages A714 and A716, it shows that Maine Flowers II was clearly written on both the backing and the paper that was over the backing. Also, record CA578-79 is a reconciliation file by Abbott showing that by no later than 2011 or 2012, as they testified, somebody had finally looked at the back of this and had seen that it now says Maine Flowers II, where they'd been recording it as Maine Flowers. That's all in the record. And that's why the district court found in its choice of law ruling at SPA7, quote, a reasonable fact finder could find that Abbott could have discovered that the painting was stolen, which would render the replete and claim untimely under Illinois law. That's the whole point, because the inquiry notice, you know, counsel's talking about the district court's fact findings and latches analysis. None of that matters to the inquiry notice analysis. We've appealed the choice of law and the failure to apply inquiry notice, which is an objective standard. This court makes, in Zuckerman, this court found, made a call, I'm sorry, in Koch, this court explained that inquiry notice is decided as a matter of law regardless of the trier of fact. And so it's simply an apposite to be relying on the latches analysis, which is just a more subjective and idiosyncratic analysis entrusted to the conscience of the court. Just quickly, the balance of interest test that the district court applied again, all it does is encourage second suit forum shopping where a first forum is proper and legitimately tied. And there's no dispute that that's the case here. Lastly, on entrustment, entrustment focuses, it's an assumption of risk doctrine. It's all about what did the entrusting party understand it was, who it was dealing with. All of this, again, this emphasizes the tie to Illinois, because this is all about what the executives at Abbott understood when they allegedly entrusted the main flowers to Duncan in the 1980s. There's evidence that they understood he was a merchant because they were buying from him around the same time. There's evidence that they understood that CAA, his company, was a distinction without a difference, quote unquote, to Duncan himself. That's their own testimony today. They kept saying they bought the painting from Bruce Duncan or through Bruce Duncan. And so those we've cited a bunch of law on this. That's the analysis that matters to entrustment. And that's Zuckerman. Can I interrupt? I mean, I thought that the district court found that the record didn't contain any evidence showing that Duncan or CAA was engaged in the business of buying and selling art in 1987. And I didn't view you as challenging that. Oh, no, we have challenged that, Judge Sullivan. I mean, that's the whole point is that what the district court found is that, OK, we were able to show through Abbott's documents, which, by the way, they didn't produce until the very end of discovery. But we were able to show through Abbott's documents that even though they were saying and representing to the district court that they'd never bought any art from Duncan, they did, in fact, buy from him in 1988. And so the question was, well, you know, we're months away from the 1987 date that they put at issue. So why are we supposed to believe? Why is the district court supposed to find that? Well, they only knew him to be a seller of art in 1988, but not in 1987. The record at pages A610 and A614 to 622 show that these executives at Abbott were dealing with Duncan going back to 1982. And so when a party like the Feinbergs are prevented from being able to prove the entrustment defense, which is exactly what happened in Zuckerman. That's where this court comes in again as a matter of law and says latches applies. And for them to say so, I say, all right, I think I think we understand the argument. And I just want to clarify that point. So, all right. Unless my colleagues have further questions. Thank you very much, Judge Walker. No. All right. So, all right. Well, that concludes our argument. Thank you. We will reserve decision. Before I adjourn court arrest the clerk to adjourn court, I just want to thank Miss Rodriguez and thank the technical folks who keep us running, even during a pandemic. This worked pretty well today, even with that one minor glitch. So. So with that, good day to everyone. Miss Rodriguez, you may adjourn court. Court is adjourned. Thank you. Thank you.